

# THE ATTORNEY GENERAL

## OF TEXAS

**JOHN L. HILL**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

September 14, 1973

Honorable Raymond W. Vowell
Commissioner
State Department of Public Welfare
John H. Reagan Building
Austin, Texas 78701

Opinion No. H- 104

Re: The scope of the Dept.
of Public Welfare's
licensing authority
under Article 695c,
§ 8(a), Vernon's Texas
Civil Statutes

Dear Commissioner Vowell:

You have written this office advising that "Recent events have prompted a complete review by the Department of Public Welfare of its policies and procedures related to the licensing of child-caring institutions" and making several inquiries concerning your licensing authority and policies under Article 695c, § 8(a), V. T. C. S.

In your inquiry, you state:

"Further, Article 695c, § 8(a) 1 defines six
different types of child-caring facilities (in addition
to child-placing facilities), including (a) Child-Caring
Institution, (b) Commercial Child-Caring Institution,
(c) Day Care Center, (d) Commercial Day Care Center,
(e) Commercial Boarding Home and (h) Convalescent
Children's Boarding Home. Although there are differ-
ences among these facilities, they are generally
described as places which 'care for' children. "

Your various questions can be categorized as follows:

(1) Whether bona fide educational facilities are
exempt from licensing, and if so, what criterion you
can reasonably follow to distinguish between bona fide
educational facilities and child-caring facilities that
would be subject to your licensing authority;

(2) The scope of the exemption of state institutions set forth in Article 695c, § 8(a)(10);

(3) The right of municipalities to license child-caring institutions and the effect of such municipal licenses upon your authority;

(4) Questions concerning the licensing of residential treatment facilities for emotionally disturbed children and what criteria you can reasonably follow to distinguish these facilities from child care facilities subject to your licensing authority;

(5) Various questions as to the age limitations of children within your licensing jurisdiction;

(6) Questions concerning organizations or businesses which are not operated primarily as child caring institutions but which offer and provide some child care to patrons as a service incident to their primary function.

By a supplemental letter, you have added the following inquiries:

(7) The extent of your licensing authority over "summer camps" and the effect of House Bill 115, Acts of the 63rd Legislature, Regular Session, 1973, upon such authority, if any; and

(8) The effect of Article 695c, § 8(a)(2)(a) upon your authority to change licensing standards or policies.

We will attempt to answer these questions in the same numerical order as indicated above.

(1) Whether bona fide educational facilities are exempt from licensing, and if so, what criterion you can reasonably follow to distinguish between bona fide educational facilities and child-caring facilities that would be subject to your licensing authority.

In your inquiry you state that your department has long distinguished the facilities described in Article 695c, § 8(a) (1) from bona fide educational facilities, as indicated in Attorney General Opinion No. V-327 (1947).

The summary of the holding of Attorney General Opinion No. V-327 is as follows:

> "Private kindergartens established for the purpose of pre-school education of young children, at which such children attend only a few hours of each day, are not required to be licensed as places 'for the care or custody of children under fifteen years of age' within the meaning of Article 4442a, Vernon's Civil Statutes [requiring the licensing of day nurseries by the State Board of Health].
>
> "The purpose and functions of each institution must be individually considered, regardless of its being called a 'kindergarten' in order to determine whether or not a license is required."

That opinion construed an earlier but similar statute and was confined to a consideration of kindergartens. However, we believe it is based upon sound reasoning and would apply to the broader subject matter of your inquiries.

Moreover, your letter indicates that following this opinion your department has consistently adhered to an administrative policy of exempting bona fide educational facilities from your licensing authority. This long-standing departmental construction is entitled to great weight in resolving any ambiguities in the statute. State v. Houston & T. C. Ry. Co. .68 S. W. 777 (Tex. 1902).

Therefore, you are advised that bona fide educational institutions do not require licensing by your department even if some child care is incidental to their operation. This would apply to boarding schools, kindergartens, private day schools, and other similar institutions whose primary function

is education.  On the other hand, as pointed out in Opinion V-327, the fact that education is an incident to the operation of an institution whose primary function is child care would not exempt that institution from licensing.  The determination is a question of fact and the decision is one which will have to be made by your department in connection with each individual institution where the problem may exist.

You will also undoubtedly find some institutions whose primary purpose is both education and child care, for instance, kindergartens whose function in the morning is education but for the remainder of the day is purely child care.  Such institutions would require licensing by your department.

You have asked us to suggest legal criteria for your determination.  The basic criterion is whether the facility's main purpose is education, in which event it requires no licensing, or child care, which circumstance would require a license.  Many variations undoubtedly will be found.  This office could not possibly anticipate all of them and cannot furnish specific criteria, a function of the expertise of your office.

Article 695c, § 8(a)(9) authorizes your department "to promulgate reasonable rules and regulations governing the granting of licenses to the institutions and facilities coming within the purview of this act", calling upon you to exercise the expertise of your office to establish criteria that will reasonably distinguish child-caring institutions,which are subject to your licensing authority, from other institutions.

You have also asked us specifically about "halfway houses" and "summer camps".  We understand "halfway houses" to be intermediate institutions, usually residential type facilities, designed to rehabilitate children between correctional institutions or mental (often drug-abuse) hospitals and the free social community.  Again, we can only say that if your investigation results in a finding that a primary purpose of the institution is child care, a license would be required; whereas, if the primary purpose is therapeutic or rehabilitative, no license would be required even if child care is an incidental activity of the institution.

The question of summer camps is involved in Question 7 below and will be discussed at that point of this opinion.

In your letter you also inquire:

> "What are the criteria for determining whether an institution is caring for 'children in danger of becoming delinquent' or 'other children in need of group care' as defined in Article 695c, § 8(a)(1)(a)?"

This inquiry is undoubtedly derived from the statutory definition of "Child-Caring Institution" (and the similar definition of "Commercial Child-Caring Institution") appearing in Article 695c, § 8(a)(1)(a) as follows:

> "Child-Caring Institution.  A child-caring institution is defined as any children's home, orphanage, institution or other place maintained or conducted, without profit, by any person, public or private association, or corporation, engaged in receiving and caring for dependent, neglected, handicapped, or delinquent children, or children in danger of becoming delinquent, or other children in need of group care, and which gives twenty-four (24) hours a day care to more than six (6) children."

These criteria are factual matters to be taken into consideration in your rule-making process. We think that inclusion of "children in danger of becoming delinquent" and "other children in need of group care" were not intended by the Legislature to broaden the limited objective of your licensing authority to institutions whose main purpose is caring for children.

(2) The scope of the exemption of state institutions set forth in Article 695c § 8

Article 695c, § 8(a)(10) provides:

> "Child-caring and child-placing institutions and agencies, which are owned and operated by the State of Texas, are exempt from the licensing and regulatory provisions of this Act;"

Your question is whether this provision would exempt child-caring facilities operated by counties, independent school districts, local mental health-mental retardation units and other political subdivisions of the state. Ordinarily reference to the "State of Texas" is a reference to a state agency, department or board which has jurisdiction coextensive with the boundaries of the State and which is an element of one of the three constituent branches of the state government. 52 Tex. Jur. 2d 728, State of Texas, § 14. On the other hand, this is not an exclusive or mandatory concept and the reference to the State of Texas might include political subdivisions of the State of Texas. It is probable that the Legislature was thinking in terms of the infeasibility of one governmental unit licensing another rather than in strictly geographical and political terms.

You have indicated a long-standing departmental construction to the effect that strictly state institutions as well as institutions operated by political subdivisions of the state, such as counties and independent school districts, are exempt from licensing under Subsection 10. We believe your departmental construction correctly resolves this issue and therefore you are advised that child-caring institutions or facilities owned and operated by counties, independent school districts, local mental health-mental retardation units or similar political subdivisions of the state are exempt from your licensing authority under Article 695c, § 8 (a) (10). State v. Houston & T. C. Ry. Co., 68 S. W. 777 (Tex. 1902).

A comparison of the wording of Article 5547-88, V. T. C. S., to that in Article 695c § 8 (a)(2) is also persuasive of the legislative intent. Article 5547-88 states that "No person or political subdivision may operate a mental hospital unless licensed to do so by the Department." Article 695c § 8(a) (2) merely requires that "every person, association, institution, or corporation, . . . shall obtain a license. . . ."

(3) The right of municipalities to license child-caring institutions and the effect of such municipal licenses upon your authority.

In your letter you inquire as follows:

"Is Attorney General's Opinion No. O-6508
still in effect insofar as it allows a municipality
to issue licenses for the operation of child-caring
facilities? If so, what are the relative responsibilities
of the municipality and the State Department of Public
Welfare in this regard?"

Attorney General Opinion O-6508 (1945) stated that a municipality, as an exercise of its police power to safeguard the health, comfort and general welfare of its citizens, may license child-caring facilities. That opinion did not state a municipal license would exempt the facility from the requirement that it obtain a license from the State Department of Public Welfare. We reaffirm this opinion and further advise that it does not change the mandatory requirements of Article 695c, § 8(a).

The responsibilities of a municipality are determined by its local ordinances. The responsibilities of the Department are the same with respect to all such facilities, and a municipal license has no effect upon the Department's responsibilities.

(4) Questions concerning the licensing of residential treatment facilities for emotionally disturbed children and what criteria you can reasonably follow to distinguish these facilities from child care facilities subject to your licensing authority.

The statutory definition of a Convalescent Children's Boarding Home is:

"A convalescent children's boarding home is
any place under public or private auspices which gives
twenty-four (24) hour-a-day care to six (6) or less
children who are physically handicapped, under medical
and/or social supervision, away from their own homes,
and not within a hospital." Article 695c § 8(a) (1) (h)

A "Convalescent Children's Foster Group Home" is similarly defined except that it applies to "more than six (6) children". Article 695c § 8(a) (2) (i).

Article 5547-88 of the Mental Health Code provides that, "No person or political subdivision may operate a mental hospital unless licensed to do so by the Department [of Mental Health and Mental Retardation]".

Your question concerns the licensing of "residential treatment facilities for emotionally disturbed or handicapped children". In our opinion a Convalescent Children's Boarding Home is one whose concern is confined to "physically handicapped" children. An institution which is treating emotionally disturbed children or "those with drug problems" would not be subject to licensing by your department.

As in other instances, the establishment of criteria is primarily a qeustion of fact and expertise. There will be institutions that care both for children who are physically handicapped and for children who are mentally handicapped, or both. Your basic guide should be the primary purpose of the institution. If the institution has dual primary purposes, and one of them is the care of "physically handicapped" children, then it should be licensed by your department. The determination is one of fact as to each institution and your basic criterion is whether the care for physically handicapped children is a primary purpose of the institution.

(5) Various questions as to the age limitations of children within your licensing jurisdiction.

Your first inquiry concerning the problems of age limits is whether Senate Bill 123, Acts of the 63rd Legislature (1973) effectively changes the definition of "child" from persons under the age of 21 years to persons under the age of 18 years.

Our answer to that is that it does. See Attorney General Opinion H-82 (1973).

You also inquire as to whether licenses are required for institutions that care only for children between 16 and 18 years of age. You point out that Article 695a § 9 indicates that no charter shall be issued by the Secretary of State to any organization having to do with " . . . the care or custody of children under 16 years of age" without an investigation first having been

made by your department and further that the definition of a "commercial boarding home" in Article 695c, § 8(a)(1)(e) refers to "children under 16 years of age". On the other hand the definitions of child-caring institution, commercial child-caring institution, day care center, commercial day care center, convalescent children's boarding home and convalescent children's foster group home contained in Article 695c, § 8(a) refer only to "children", which, as we have indicated above, implies an age limit of 18 years.

As a result of a long-standing departmental construction of the statute, your department has never attempted to license institutions which are caring only for children of age 16 or older.

We agree that the statute as a whole is anomalous and that your departmental construction creates a practical solution. However, we do not believe that there is any basic ambiguity in the definitions of child-caring institution, commercial child-caring institution, day care center, commercial day care center, convalescent children's boarding home or convalescent children's foster group home, and, accordingly, we hold that your licensing authority as to these specific institutions extends to those who care for children up to the age of 18. Your long-standing departmental construction, limiting your authority to institutions caring for children under age 16, cannot change the clear terms of the statute, which speaks only of children and which provides that:

> "Every person, association, institution, or corporation, whether operating for profit or without profit, who shall conduct or manage a child-caring institution, agency, or facility coming within the purview of this act shall obtain a license to operate from the State Department of Public Welfare. . . ."
> Article 695c § 8 (a)(2)(a)

See McCallum v. Associated Retail Credit Men of Austin, 41 S. W. 2d 45 (Tex. Comm., 1931).

Therefore we believe that any child-caring institution, commercial child-caring institution, day care center, commercial day care center, convalescent children's boarding home or convalescent children's foster group home that cares for children under 18 years of age, and is not otherwise exempt, should be licensed by your department, even though it has not previously been licensed due to your departmental construction of the statute.

(6) Questions concerning organizations or businesses which are not operated primarily as child-caring institutions but which offer and provide some child care to patrons as a service incident to their primary function.

You have made inquiry "concerning organizations or businesses which are not operated primarily as child-caring institutions but which offer and provide some child care to patrons as a service incident to their primary function. Examples of this include nurseries operated by churches for children whose parents are attending services, 'Mother's Day Out' nurseries operated by churches and other groups, bowling alleys and shopping centers which operate nurseries for patrons, etc."

Because of the many varieties of these types of facilities, no strict rule can be established and again you will probably want to adopt rules and regulations establishing criteria such as whether the parents remain on the premises while the child is cared for, and the length of time of leaving the child and other matters you deem reasonable in determining whether a particular facility is in fact being operated only as a casual service incidental to its primary function, so as to bring such service outside the ambit of a "child-caring" institution as defined by the statute.

(7) Your licensing authority over "summer camps" and the effect of House Bill 115, Acts of the 63rd Legislature, Regular Session, 1973, upon such authority, if any.

Your next inquiry concerns camps, particularly summer camps, and the effect of The Texas Youth Camp Safety and Health Act (Acts 1973, 63rd Legislature, Regular Session, ch. 142, p. 316) enacted as House Bill 115 and to be codified as Article 4447e, V. T. C. S.

We are of the opinion that House Bill 115 places total jurisdiction for supervision and licensing of all youth camps in the State Board of Health.

Section 1.03 (6) of the Act defines "youth camp" as follows:

"[Y]outh camp means any property or facilities having the general characteristics of a day camp, resident camp or travel camp, as these terms are generally understood, used primarily or in part for recreational, athletic, religious and/or educational activities and accommodating five (5) or more children under eighteen (18) years of age who attend or temporarily reside at the youth camp for a period of, or portions of, four (4) days or more."

Section 2.01 of the Act provides that, "[T]he State Department of Health is the principal authority in the state on matters relating to the condition of safety and health at youth camps in Texas." And § 2.02 provides in part as follows:

"Sec. 2.02. (a) The department [of Health] shall have authority to make and promulgate rules and regulations consistent with the policy and purpose of this Act and to amend any rule or regulation it makes. In developing such rules and regulations, the department shall consult with appropriate public and private officials and organizations, and parents and camp operators. It shall be the duty of the department to advise all existing youth camps in this state of this Act and any rules and regulations promulgated under this Act.

"(b) The department shall promulgate rules and regulations which establish standards for youth camp safety and health. Such safety and health standards may include consideration of adequate and proper supervision at all times wherever camp

activities are conducted; sufficient and properly
qualified directors, supervisors and staff; proper
safeguards for sanitation and public health; adequate
medical services for personal health and first aid;
proper procedures for food preparation, handling
and mass feeding; healthful and sufficient water
supply; proper waste disposal; proper water safety
procedures for swimming pools, lakes and water-
ways, and safe boating equipment; proper mainte-
nance and safe use of motor vehicles; safe buildings
and physical facilities; proper fire precautions; safe
and proper recreational and other equipment; and
proper regard for density and use of premises."

Section 2.04 of the Act provides:

"Every person operating a youth camp in
Texas on the effective date of this Act shall apply
for and obtain a license for each youth camp. Such
application shall be on a form provided by the depart-
ment and shall be submitted in full not later than May
1, 1974.  After submission such persons may continue
operating until and unless the application is rejected
by the department. "

These provisions form the basis for our opinion.  The provisions
of § 2.02(b) are so broad and all-encompassing that no area is left for your
department's concern which would not involve a duplication of the efforts of
the State Department of Health.

It is true that § 2 of House Bill 115 provides:

"This Act is cumulative of all other laws and
the requirements and responsibilities contained herein
shall not affect requirements and responsibilities of
other state agencies and political subdivisions in
accord with existing statutes."

However, we do not interpret this provision as establishing licensing jurisdiction over youth camps in your department.  Summer camps are primarily recreational and would not be subject to your jurisdiction in any event.  Other youth camps mentioned in House Bill 115 are also primarily recreational or educational or have primary functions other than child caring.  Accordingly, even in the absence of House Bill 115, your jurisdiction over youth camps would arise only in isolated situations and we believe the Legislature has clearly manifested an intention to place the entire responsibility for the care of children in youth camps in the State Department of Health.

Our opinion renders moot your inquiry concerning the criteria you would follow in determining the extent of your licensing authority in connection with summer or youth camps.

(8)  The effect of Article 695c, § 8(a)(2)(a) upon your authority to change licensing standards or policies.

Your next inquiry is as follows:

> " . . . when this Department changes licensing standards or policies, does Article 695c, § 8(a)2(a) require that an old license remain in full force and effect even after appropriate notice of the changes has been provided to the facility in accordance with Article 695c, § 8(a)9?"

Article 695c, § 8(a)(2)(a) provides that, once issued, a "license shall be in full force and effect until suspended or rescinded by the Department of Public Welfare as hereinafter provided."

Section 8(a)(7)(b) authorizes your department "to suspend or revoke any license if it ascertains failure to comply with the law or with the reasonable rules and regulations provided for herein," providing that certain procedures for notice and hearing are followed.

Section 8(a) (9) of the act gives your department "the right and the authority to promulgate reasonable rules and regulations governing the granting of licenses to the institutions and facilities coming within the purview of this Act, and for the suspension or revocation of such license for the operation of such institutions and facilities named in this Act. . . ."

We construe these provision to mean that you have the authority to require periodic reports from licensees and to make other reasonable rules and regulations necessary to the effectiveness of your supervision. The failure of any licensee to comply with your reasonable rules and regulations can result in the revocation, rescission or suspension of such license.

## SUMMARY

1. Bona fide educational facilities are exempt from licensing by the State Department of Public Welfare under Article 695c, Vernon's Texas Civil Statutes. The criteria which distinguish whether such an institution should be licensed may be set out in whatever reasonable rules and regulations the State Department of Public Welfare may promulgate to determine whether the primary purpose of a particular institution is educational or child-caring, or both.

2. The exemption of institutions owned and operated by the State of Texas, provided in Article 695c, § 8(a)(10), applies to child-caring facilities operated by counties, independent school districts, local mental health retardation units and other political subdivisions of the State of Texas.

3. Municipalities have the power to license child-caring institutions, but the respective powers and responsibilities of municipalities and the State Department of Public Welfare are independent of one another.

4. The licensing responsibilities of the State Department of Public Welfare concerning Convalescent Children's Boarding Homes and Convalescent Children's Foster Group Homes are confined to those facilities whose primary purpose is the treatment and care of physically handicapped children and do not include facilities whose primary purpose is the treatment of emotionally disturbed or mentally ill children.

5. All references to "child" in Article 695c refer to persons under the age of 18 years by virtue of Senate Bill 123, Acts of the 63rd Legislature (1973), and wherever the definition of a facility refers simply to "children" without specifying an age, such facilities caring for children under 18 years of age are subject to licensing by the State Department of Public Welfare.

6. Institutions which are not operated primarily for child-caring purposes but which offer and provide some child care to patrons or customers as a service incident to the primary function of the business are not normally subject to licensing unless the primary purpose of the division involved is child care as determined by reasonable criteria established by rules and regulations promulgated by the State Department of Public Welfare.

7. The licensing of "summer camps" or "youth camps" is totally the concern of the State Board of Health by virtue of the provisions of House Bill 115, Acts of the 63rd Legislature, 1973.

8. A license once granted by the Department of Public Welfare remains in force and effect until suspended or rescinded by the Department but is subject

to reasonable rules and regulations promulgated
by the Department including requirements, if any,
to make periodic reports concerning the status of
the licensee.

Yours very truly,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee